IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Jennifer S., | ) | Case No.: 6:21-cv-04047-JD-KFM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| Commissioner of Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This social security matter is before the Court with the Report and Recommendation of United States Magistrate Kevin F. McDonald ("Report and Recommendation" or "Report") pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff Jennifer S.[1] ("Plaintiff" or "Jennifer") brings this action pursuant to 42 U.S.C. §§ 405(g), as amended, seeking judicial review of a final decision of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security ("Defendant" or "Commissioner") denying her Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The Magistrate Judge issued a Report and Recommendation ("Report") on July 5, 2022, recommending the Commissioner's decision be affirmed. (DE 14.) On July 19, 2022, Plaintiff filed an Objection to the Report, contending remand is warranted because the ALJ "'failed to explain how'" Dr. McAllister's findings supported the RFC" and "the ALJ's evaluation of it as 'other medical evidence' still needed to be logical and accurate." (DE 15, p. 1.) The Commissioner filed a Reply in support of the Report. (DE 16.)

---

[1]   The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

1

Having carefully considered the Plaintiff's objections and the applicable law, the Court adopts the Report and Recommendation and affirms the decision of the Commissioner.

## **BACKGROUND**

The Report and Recommendation sets forth the relevant facts and legal standards, which this Court incorporates herein without a full recitation. (DE 14.) However, as a brief background relating to the objections raised by the Plaintiff, the Court provides this summary. Plaintiff was 47 years old when she alleged that she became disabled and initially stopped working in 2017 upon being laid off from her job (DE 9-3, p. 5), but she returned to work in a heavy exertional job as a production dishwasher in 2020 during the time she claimed she was disabled (DE 9-2, pp. 41-45, 9-6, p. 53).

Plaintiff filed applications for DIB and SSI benefits on December 17, 2019, with both applications alleging that she became unable to work on August 1, 2019. (DE 9-5, pp. 10-16.) The applications were denied initially (DE 9-3, pp. 3-20) and on reconsideration (DE 9-3, pp. 21-40) by the Social Security Administration. On June 3, 2020, Plaintiff requested a hearing. (DE 9-4, pp. 24-37.) On June 29, 2021, the ALJ considered the case *de novo* and found that the Plaintiff was not under a disability as defined in the Social Security Act, as amended. (DE 9-2, pp. 18-31.) The ALJ's finding became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on October 29, 2021. (DE 9-2, pp. 2-4.) Plaintiff then filed this action for judicial review. (DE 1.)

Plaintiff has a history of low back pain. On July 16, 2019, Plaintiff sought emergency room treatment for back pain and left buttocks pain radiating down her left thigh. (DE 9-7, p. 38.) Plaintiff stated she had been working 130 hours per week for the last several weeks and thought that she might have "just overdone it." (Id.) An examination revealed hypertrophic lumbar paraspinal muscles, but normal muscle tone, no restricted range of motion, and grossly intact sensation. (Id. at 40.) On July 20, 2019, four days later, Plaintiff presented to New Horizon Family

Health for a follow-up visit for her back and joint pain. (Id. at 2-4.) A musculoskeletal examination revealed tenderness over the lower back, but no malalignment or bony abnormalities and normal movement of all extremities (Id. at 4). Plaintiff was assessed with chronic low back pain and referred to an orthopedist. (Id.)

In late July 2019, Plaintiff presented to Piedmont Orthopedic Associates for an evaluation of her back pain. (Id. at 13-15.) She had some weakness in the left leg and described her pain as a deep ache in her back, with intermittent radiating pain and tingling in her leg. (Id. at 13.) An examination of the lumbar spine revealed positive straight leg-raising on the left, minimal hip irritability with rotation bilaterally, intact sensation to light touch and pin prick in the distribution of the L3-S1 dermatomes, subjective tingling at L5 on the left, and an antalgic gait. (Id. at 14.) Plaintiff was assessed with left leg pain consistent with left S1 radiculopathy, which was thought to be due to spondylolisthesis. (Id. at 15.) Plaintiff's providers at Piedmont Orthopedic Associates referred her for an MRI of the lumbar spine on August 12, 2019. (Id. at 18-19.) The MRI showed: (1) degenerative disc and facet disease at L5-S1 with a broad-based left posterior lateral disc protrusion that abuts and slightly deflects posteriorly the traversing left S1 nerve root; (2) mild bilateral foraminal narrowing at L5-S1, and (3) degenerative disc disease with left paracentral disc protrusion at L4-5. (Id. at 19.)

On August 13, 2019, one day later, Plaintiff returned to Piedmont Orthopedic Associates for a follow-up visit for her low back and left leg pain (Id. at 9-10). The examining nurse noted that x-rays of the lumbar spine had shown only a slight degenerative spondylolisthesis of L5 on S1 (Tr. 417). The MRI of the lumbar spine had shown a left paracentral disc protrusion at L4-5, but no nerve root impingement; significant facet arthropathy at L5-S1; and posterior left lateral disc protrusion slightly cutting and deflecting the traversing left S1 nerve root. (Id. at 9, 18.)

Plaintiff was assessed with left leg pain consistent with left S1 radiculopathy due to a disc protrusion causing some lateral recess stenosis and slight anterolisthesis. (Id. at 9.)

On October 10, 2019, Plaintiff sought emergency room treatment for low back pain that radiated into her left hip and leg. (Id. at 36.) She explained that she had started a new job the day before and her work boots were "like walking on the ground." (Id.) Plaintiff reported that she had received steroid injections in the past and was waiting for approval from her insurance provider. (Id.) An examination revealed tenderness and pain in the lumbar spine (Id. at 37.) She was diagnosed with sciatica and discharged with a prescription for Tramadol. (Id.) On November 6, 2019, one month later, Plaintiff again sought emergency room treatment for low back pain. (Id. at 33.) She continued to wait for her steroid injections to be approved and had run out of Tramadol. (Id.) At that time, Plaintiff attributed her low back pain to engaging in a lot of heavy, repetitive lifting at work. (Id.) She denied numbness or weakness, and an examination revealed normal strength and no sensory deficits. (Id. at 33-35.)

Plaintiff returned to the emergency room on November 9, 2019, three days later, following a motor vehicle accident. (Id. at 112-116.) She reported chest, neck, and right leg pain, but an examination revealed no tenderness in the spine and normal strength, sensation, and range of motion in all extremities. (Id.) Finally, Plaintiff presented to the emergency room on January 7, 2020, with complaints of a "slipped disc" with pain radiating down her right leg. (Id. at 28.) An examination revealed no focal deficits and her reflexes, motor strength, and gait were all normal. (Id.)

On April 21, 2021, Savonya McAllister, M.D. ("Dr. McAllister"), evaluated Plaintiff at the Commissioner's request. Plaintiff stated that her pain started in 2015 after a car accident, and she was subsequently diagnosed with vertebral arthritis as well as potentially bulging disks; however,

4

Plaintiff declined surgery and never started injection therapy. At that time, Plaintiff was attending physical therapy. Plaintiff reported that the pain was located in her lumbar sacral region with radiation to her left arm and left leg and caused difficulty with standing for longer than 30 minutes or sitting for longer than 30 minutes. Plaintiff reported that she had been walking with a cane for approximately one year to help mitigate the pain, and her pain and disability caused her significant emotional stress. She reported that she was able to feed herself and dress herself, she could sit for 30 minutes and could walk less than one mile, that she can stand for 30 minutes, there were no heavy items at home she could not lift, she still drove, she could help with the dishes, and she had been a smoker for 13 years and currently smoked about half a pack a day.

    Dr. McAllister noted that Plaintiff had a normal range of motion in her cervical spine. She noted that Plaintiff's lumbar spine had normal flexion. Dr. McAllister noted that Plaintiff had normal range of motion of bilateral shoulders, elbows and wrists; her left knee had 130 degrees of flexion and normal extension; her right knee had normal range of motion; her left hip had 35 degrees abduction, normal adduction, normal flexion, normal internal rotation, 45 degrees external rotation, and 25 degrees extension; her right hip had normal range of motion; her bilateral ankles had normal range of motion; her straight leg raising was positive on the left at 70 degrees and negative on the right. Dr. McAllister noted that without her cane, Plaintiff had a very antalgic gait, and there was minimal weight through her left leg. Dr. McAllister also noted that due to her left leg pain as well as decreased strength, Plaintiff felt unable to safely perform the squat, tandem walk, heel walk, or toe walk. Dr. McAllister noted that Plaintiff's left leg had 4/5 strength proximal and distal; she had decreased sensation of the anterior left thigh as well as the anterior left knee; she had significant pain as well as some decreased range of motion in the lumbar spine and also exhibited pain and decreased range of motion to a certain extent in the left leg and that it seemed

to primarily affect her walking and other attempts at movement. (DE 9-7, pp. 179-183) (internal citations omitted.)

In making the determination that the plaintiff is not entitled to benefits, the ALJ made findings and concluded Plaintiff has not been under a disability, as defined in the Social Security Act, from August 1, 2019, through the date of the decision. The Report then reviewed whether proper legal standards were applied and whether the final decision of the Commissioner is supported by substantial evidence. The Report recommends the decision of the Commissioner be affirmed.

## **LEGAL STANDARD**

The magistrate judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. See Mathews v. Weber, 423 U.S. 261 (1976). The Court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection has been made, and may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge. See 28 U.S.C. § 636(b)(l). However, de novo review is unnecessary when a party makes general and conclusory objections without directing a court's attention to a specific error in the Magistrate Judge's proposed findings. See Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of a specific objection, the court reviews the report and recommendation only for clear error. See Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (citation omitted); see also Tyler v. Wates, 84 F. App'x 289, 290 (4th Cir. 2003) ("A general objection to the entirety of the magistrate judge's report is tantamount to a failure to object.")

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. Section 205(g) of the Act provides, "[t]he findings of the Secretary

as to any fact, if supported by substantial evidence, shall be conclusive . . . ."[2] 42 U.S.C. § 405(g). The court must uphold the Commissioner's decision as long as it was supported by substantial evidence and reached through the application of the correct legal standard. See Johnson v. Barnhart, 434 F.3d 650 (4th Cir. 2005). This standard precludes a de novo review of the factual circumstances that substitutes the court's findings for those of the Commissioner. See Vitek v. Finch, 438 F.2d 1157 (4th Cir. 1971). "From this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." Flack v. Cohen, 413 F.2d 278, 279 (4th Cir. 1969). "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that his conclusion is rational." Vitek, 438 F.2d at 1157-58. However, the court does not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." Johnson, 434 F.3d at 653. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Id.

**DISCUSSION**

Plaintiff objects to the Report on the basis that the "ALJ 'failed to explain how' Dr. McAllister's findings supported the RFC" and "[i]t is unclear how the ALJ considered Dr. McAllister's findings and came to his [Residual Functional Capacity ("RFC")] determination. (DE 15, p. 2.) Conversely, the Commissioner contends there is substantial evidence in the record to support the ALJ's decision and the Report's recommendation to affirm the same for the following

---

[2] "Substantial evidence has been defined innumerable times as more than a scintilla, but less than a preponderance." Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964). "It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019).

reasons. (DE 15, p. 1.) First, Dr. McAllister's report was not a "medical opinion" under the revised regulations because it was not a specific statement about Plaintiff's abilities or limitations in performing the demands of work activities." See 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). Therefore, the regulations do not require the ALJ to evaluate its persuasiveness or explain how he considered the supportability or consistency factors relevant only to medical opinion evidence. See 20 C.F.R. §§ 404.1520c, 416.920c. Instead, Dr. McAllister's judgment about the nature and severity of Plaintiff's impairments, her medical history, the clinical findings, the diagnoses, and the treatment prescribed was "other medical evidence," and her statement of medical signs (such as strength and reflexes) was "objective medical evidence." See 20 C.F.R. §§ 404.1513(a)(1) and (3), 416.913(a)(1) and (3). Thus, the ALJ did not disregard or fail to evaluate Dr. McAllister's report, but rather, he correctly evaluated it according to its appropriate category of evidence. See 20 C.F.R. §§ 404.1513(a)(1)-(3), 416.913(a)(1)-(3) (describing the relevant categories of evidence the ALJ considers) (Id. at 14).

Second, with respect to Dr. McAllister's finding regarding Plaintiff's ability to walk, namely that she walked with an antalgic gait and that her complaints of pain and decreased range of motion in her back and left leg seemed to primarily affect her walking, the ALJ carefully considered Dr. McAllister's examination findings when he determined Plaintiff's RFC and also limited her to a range of light work. The ALJ explained that although Dr. McAllister's findings "support[ed] limitations related to [Plaintiff's] back pain, they [did] not indicate a severity of symptoms that would preclude work within the limitations of the RFC." (DE 9-2, p. 24.)

The Court finds that the ALJ considered Dr. McAllister's report in the context of all of the evidence when he made his RFC findings. For example, Plaintiff continued to work after her motor vehicle accidents in 2015 and 2016 and through June 2020, when she was laid off due to

8

the COVID pandemic rather than due to her physical impairments; the objective longitudinal findings were not consistent with Plaintiff's allegations and, instead, supported limitations to light work with postural restrictions as noted in the RFC; Plaintiff's medical records showed unremarkable physical examination findings and periods of no complaints of back pain; Plaintiff had normal strength and movement in her extremities even when she was working 130 hours per week and thought she had simply "overdone it;" thereafter, Plaintiff engaged in a lot of heavy and repetitive lifting at work; Plaintiff denied weakness and an examination was normal; and further examinations in late 2019 and early 2020 revealed normal strength and sensory findings and a normal gait. (DE 9-2, p. 23-24.) The Report correctly noted the ALJ's finding that "the ALJ's decision contain[ed] an adequate explanation of the inconsistencies between Dr. McAllister's findings and the record evidence." (DE 14, p. 7.)

Lastly, the Report concluded that, even if Dr. McAllister's statement that Plaintiff's pain "seemed to primarily affect her walking" could be construed as an opinion, "the ALJ did note – albeit without using the word persuasive – that he had considered Dr. McAllister's examination findings and found that they did not support greater limitations than those provided for in the RFC assessment." (DE 14, p. 8.) The Report states, "[i]ndeed, it is unclear whether Dr. McCallister's vague indication that plaintiff's impairments affected her ability to walk is in conflict with the RFC assessment provided by the ALJ, which limited the plaintiff to a range of light work (compare Tr. 589 *with* Tr. 20)." (Id.) In her objections, Plaintiff contends that this statement in the Report supports her request for remand. The Court disagrees. Plaintiff relies on this statement in isolation. More fully, the Report states, "[n]evertheless, as outlined by the ALJ, although the plaintiff reported trouble walking during the administrative hearing (Tr. 46-47), her sparse treatment notes [were] inconsistent with her testimony (see Tr. 20-24)." (Id.) By way of further explanation, the

Report presents a detailed review of the medical findings that the ALJ considered, noting how the evidence showed that Plaintiff was ambulatory without difficulty and her examination findings were normal, including a normal gait. (DE 14, p. 8.) The Report also discussed, and found persuasive, that the evidence showed that Plaintiff continued to work at jobs that required physical labor.

Given the record as a whole, the Plaintiff's mere disagreement as to the DIB and SSI decision is not persuasive. Therefore, the Report properly considered the evidence in the record, Plaintiff's objections are overruled, and the Court affirms the Commissioner's decision.

## CONCLUSION

For the foregoing reasons, the Court adopts the Report and Recommendation and affirms the Commissioner's decision.

**AND IT IS SO ORDERED.**

Joseph Dawson, III
United States District Judge

January 3, 2023
Florence, South Carolina